UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANDY ANDERSON,

       Plaintiff,                                   Case No. 2:09-cv-109

v.                                                 HON. GORDON J. QUIST

SHERRI ANDREWS, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Andy Anderson, an inmate currently confined at the Alger Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, defendants include LMF Mail Room Clerk Sherri Andrews and LMF Property Room Officer Debra Olger, both who are employed by the Michigan Department of Corrections at LMF.

Plaintiff's complaint alleges that on December 11, 2007, Plaintiff received mail from Attorney George B. Mullison, Smith & Brooker, P.C., via United Parcel Service. Plaintiff states that Defendant Olger opened and censored the mail outside Plaintiff's presence, despite the fact that Plaintiff had requested special handling for his legal mail. Defendant Olger claims that she did not open the package in the property room, and that she forwarded the package, unopened, to the mail room the same day it was received for processing. Defendant Olger wrote on the property room log that the package was legal mail because the return address said "P.C." and she thought that designation was used only by attorneys. At that time, Defendant Olger was unaware that other

professions could operate as a "P.C." In her affidavit, Defendant Andrews stated that if mail is only identified with the initials "P.C." without further clarification, it does not qualify as legal mail under policy guidelines and therefore she is left to guess whether it is legal mail.

Plaintiff states there was no special handling of his package because the Defendants said there was no special handling for packages sent via a "commercial carrier." Plaintiff claims that even if the mail was opened, he was still entitled to have his mail delivered to him so he could sign for it and prevent the opened legal mail from being abandoned, delivered incorrectly, or read. Plaintiff followed the MDOC Grievance Procedure and had his Step III Grievance denied on April 23, 2008. The grievance respondent stated that because the package was properly handled and it could not be determined whether any documents were missing when the opened package was delivered to the grievant, the grievance appeal was denied. Plaintiff then initiated this complaint.

Plaintiff claims that Defendants' actions violated his rights under the First and Fourteenth Amendments to the United States Constitution, as well as his rights under state law. Plaintiff is suing Defendants in their individual capacities and is seeking compensatory and punitive damages in the amount of $5,000.

Presently before the Court is Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party

opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78 (1987). The Michigan Department of Corrections may require that inmates specifically request that their legal mail be opened in their presence. *Knop v. Johnson*, 667 F. Supp. 467, 473 (W.D. Mich. 1987), *appeal dismissed*, 841 F.2d 1126 (6th Cir. 1988). Further, a prison can restrict the opening of special mail in the presence of the inmate to those situations wherein the sender is identified as an attorney and the envelope makes a specific restriction on the opening. *Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974). With regard to mail from an inmate's attorney, prison officials have a right to open and inspect such mail for contraband. However, they may not read the

mail and must allow the prisoner to be present, upon request, if the envelope is marked as confidential. *Lavado v. Keohane*, 992 F.2d 601, 607-09 (6th Cir. 1993); *see also Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993) (court abandoned the *per se* rule that the Constitution requires that the opening and inspection of legal mail be in the presence of the inmate).

There is no dispute between the parties that Plaintiff had requested special handling of legal mail pursuant to MDOC Policy Directive 05.03.118, "Prisoner Mail," ¶ HH. There is also no dispute that when Plaintiff or other prisoners who have requested special handling receive incoming legal mail, it is to be opened in the prisoner's presence pursuant to Policy Directive 05.03.118, ¶ II. However, Plaintiff did not receive mail that was clearly marked as "legal mail" that would have required special handling. MDOC Policy Directive 05.03.118, ¶ HH, defines legal mail as: "[o]nly mail from an attorney or law firm, a legitimate legal service organization, a non-prisoner paralegal working on behalf of an attorney, law firm, or legal service organization, the Department of Attorney General, a prosecuting attorney's office, a court, a clerk of the court, or a Friend of the Court office shall receive this special handling, and only if the mail is clearly identified on the face of the envelope as being from the above. It is not sufficient for the envelope to be simply marked 'legal mail.'"

In *Sallier v. Brooks*, the Sixth Circuit analyzed the question of what is and what is not considered legal mail. There, the Court did not extend protection to mail that did not specifically indicate on the envelope that it contained "confidential, personal, or privileged material, that it was sent from an attorney at the ABA, or that it related to a currently pending legal matter in which Sallier was involved." *Sallier v. Brooks*, 343 F.3d 868, 875 (6th Cir. 2003). Therefore, in order for a prisoner to receive special handling of legal mail under MDOC guidelines, the envelope or package must be clearly labeled so that the mail room clerk is aware that the piece of mail is from the

prisoner's attorney and that it contains legal documents. The package in question came marked only with Plaintiff's address and the return address of the person sending the package, which included the initials "P.C." A variety of licensed professionals use the designation "P.C.," including accountants, psychologists, therapists and attorneys. Since there was no other indication on the package that it was from the prisoner's attorney, Defendant Andrews, the mail room clerk, was left to guess who the sender was and, thus, properly opened the package without affording it the special handling required for legal mail.

Even if Defendant Andrews incorrectly assessed that the package was not legal mail because it was not properly marked as such, the opening of one piece of properly marked legal mail outside the prisoner's presence is not enough to state a claim. "It has been clear in this circuit for sixteen years that 'blatant disregard' for mail handling regulations concerning legal mail violates constitutional protections. Two or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim." *Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009). Plaintiff alleges only one piece of legal mail was opened outside his presence. This does not suffice as a blatant disregard for mail handling on Defendants' part, especially considering the piece of mail was questionable as to whether it was in fact legal mail. Thus, Defendants did not violate Plaintiff's constitutional rights by opening the ambiguously marked piece of mail outside his presence.

Defendants Olger and Andrews assert that they are entitled to summary judgment on Plaintiff's official capacity claims against them because such claims are barred by the Eleventh Amendment. Any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick*

*v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished). Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[1] The State of Michigan has not consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment therefore bars official-capacity suits for damages against its employees. Therefore, any official capacity claims are properly dismissed.

Defendants Olger and Andrews also claim Plaintiff's individual capacity claims are barred by qualified immunity because Plaintiff has failed to show a violation of clearly established law. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction,

---

[1] The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal Defendants, the claim is barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994).

and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As noted above, Defendants Olger and Andrews did not violate Plaintiff's constitutional rights. Accordingly, they are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' Motion for Summary Judgment. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (Docket #21) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: June 29, 2010

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE